May it please the Court, I'm Matt Adams. On behalf of the petitioner, I'm going to seek to reserve one minute per rebuttal. The Board of Immigration Appeals affirmed the adverse credibility determination, finding that the immigration judge pointed to specific and cogent reasons. But the two reasons that the Board pointed to were both fundamentally flawed. One, the IGA relied on the fact that Mr. Bossa did not disclose his fear when he was questioned by the Border Patrol officer. However, Mr. Bossa had explained that he was afraid to talk about his sexual orientation when he was asked in front of those other individuals. He was detained in a group setting and he was asked if he had a fear in front of other individuals from Haiti. Now, both the immigration judge and the Board acknowledged that he had explained he was afraid to talk about his fear in that open setting to the Border Patrol officer. Yet neither the immigration judge nor the Board even bothered to address why that explanation was not credible. And this compels reversal for two different reasons. First, this court has made clear time and again that where there is an adverse credibility determination and the agency fails to address the proffered explanation, it's a reversible error. And we cited various cases like Zhu versus Mukasey and the Soto Olarte case in court. Time and again, this court has said the agency must explain why the proffered explanation is insufficient. Yet neither the Board nor the immigration judge even addressed that explanation. This alone requires reversal. But it's more than that. The case law from this court, as well as the agency's own guidance, require that the agency take great care when dealing with sensitive claims of this nature. And especially when they're using the failure to reveal those details as a basis for an And the agency, again, does not address this. And we cited to the court's decision, Zhu versus Mukasey, where the applicant at the airport failed to reveal that she had been raped. And the court rejected the adverse credibility determination based on the failure to address those sensitive details. Counsel, I have a question that Vassa stated in Brazil that he received a humanitarian visa that was valid for five years, and also that he was a permanent resident. Are these two statements inconsistent? I don't know if they're inconsistent, and that is because I don't know exactly how Brazilian immigration law works, whether those are encompassing, overlapsing statuses or if those are completely separate statuses. But what I do know, and this is the second basis that the board relied on, is that Mr. Bosa provided the agency with his passport, and provided the agency with the visa. So he gave the court the documentation that was required to make this legal determination. But wasn't his visa stamp permanent? The translation of the visa says permanent. And if it was permanent, the board should have found that that constitutes a firm resettlement. And then it would have been on him to demonstrate why he qualifies for one of the two exceptions to firm resettlement. So in your view, there was no inconsistent testimony from him regarding his status in Brazil? No, no. His statements were inconsistent. I think he made ignorant characterizations of his status. But he provided the documentation to the court that allowed the court to make the legal determination. And that's, I think, the key point, that it was a legal determination. He wasn't hiding the ball. This isn't the case of someone who said on one hand they had a visa, and then later backtracked and said they didn't have a visa. He always admitted he had some status, and he provided the documentation which showed what his status was. So he wasn't attempting to deceive anyone. Later, when he obtained legal representation, he said, well, yes, this was a limited visa. It was for five years. It didn't confer a permanent status on me. And so, yes, that contradicts what he first said when he was unrepresented about it being a permanent resident. Well, but isn't the agency entitled to rely on the statements that he made? Because he said he admitted to being a permanent resident in the credible fear interview and the asylum application, but then in his declaration he said he was a temporary resident. Why is that not an inconsistency that the agency can rely upon? Because all that demonstrates is his own ignorance. Time and again, for example, I have clients come to my office and say, I have asylum. They show me their work permit.  They've been granted a work permit while their application is adjudicated. They're not lying to me. They don't understand the gradations. But whether or not you have asylum is a much more complicated question than whether or not you are a permanent or a temporary resident. And he changed it after the consequences became apparent. After he saw a lawyer and realized what the consequence was of saying a permanent resident. That's how the agency certainly could interpret that, couldn't it? I would respectfully disagree that it's a much more complicated inquiry as to whether he has asylum. I myself have tried to decipher the Brazilian laws to figure out exactly what his status has. Well, could you tell us the difference between a humanitarian visa and a regular visa? I'm sorry? What is the difference? My understanding is that a regular visa, you are already on a permanent track, whereas a humanitarian visa, you have to take subsequent steps. You have to show that you have qualifying employment in order to then, after those five years, obtain the lawful status. Isn't that what he claimed then, after he got a lawyer? That is what he claimed after he got a lawyer. Initially, he provided the documents which showed what his status was, and he said, this gave me permanent residence. But with that, I couldn't work. And then later on, he explained, yeah, that's a visa for four or five years, and I would have had to have a job in order to keep that on. But even if that qualifies as firm resettlement, and I'll be very frank that a humanitarian visa, that's an unsettled question. On remand, that could still qualify as firm resettlement. He would still then have the opportunity to demonstrate his eligibility. Counsel, the issue is not whether or not he actually qualified for firm resettlement. The issue is whether or not he was credible in his testimony regarding his status. And that's the issue, not whether or not we have to go through all of the permutations of how one gets to be a permanent resident, but was he credible in his representations to the agency. And I think it's kind of a red herring to go to whether or not he actually qualified for permanent resettlement, because that's not the issue before us. I agree the issue before us is his credibility. But the issue before the agency was the firm resettlement. It was a pure legal issue. And instead of addressing that legal issue, the immigration judge had his visa. The immigration judge nor the board actually addressed the legal question. They took the easier path. Exactly. And they didn't have to make a determination on firm resettlement if the adverse credibility determination stands up. So they didn't have an obligation to make that ruling. You would prefer that that ruling be made, but that wasn't required if the adverse credibility determination is supported by substantial evidence. But an adverse credibility determination has to include an attempt to deceive. It can't just include a misstatement. If someone doesn't understand the contours of their legal status, they are not deceiving the court when they make a misstatement. And here, when he obtained legal representation, when he was provided with the expertise necessary to more fully explain his status, he did so. That's not a misstatement to, I'm sorry, a misstatement is not an attempt to deceive. And that is why we have to look at the fact that he provided the passport. He provided the visa. If he had simply said, I don't know what I have, here it is, then the agency would have gone forward. But instead, they focused on the fact that he, on the one hand, described it as permanent residence and on the other hand, described it as a humanitarian visa. Well, I submit that's irrelevant. The agency had the documentation that the judge needed to make the legal determination. All right, counsel, you're down to 37 seconds. Thank you. Thank you. May it please the court, Andrea Jeevis on behalf of the Attorney General. This court should deny the petition for review because substantial evidence supports the agency's finding, adverse credibility finding. Well, let me just intercede here. He explained he did not reveal his fear of persecution because he was with a whole group. He did not want them to know his sexual orientation because it could affect his family, et cetera. Please explain to me how the immigration judge provided a specific, cogent reason to reject this explanation. Well, the immigration judge does mention he has two explanations for his border interview. That he didn't understand the interpreter and there were other Haitians in the room. And that's why he did not discuss his fear of persecution. The immigration judge on 153 mentions that there were other Haitians in the room and then at 160 to 161 finds his explanations unconvincing. So why? What basis did the immigration judge give for finding the explanation regarding the presence of other Haitians? That was my question. He found the... While you're looking for that, you agree that there has to be an explanation given, correct? Yes, there should be an explanation given. The board on page four talks about the border interview. And then references the IJ's pages. And then it's 160, 161 where he says he's just not convinced by the various explanations. And then this is a post-real ID act, so he talks about the totality of the circumstances. And then on page 153, he discusses the Creole interpreter at the bottom and then that he was in a large room surrounded by other Haitians. But let's talk... The immigration judge is required to give a specific cogent reason. You're just reiterating the facts. He says the court does not know what to believe and the burden of proof is unresponded. His explanations were likewise unconvincing. But why? Does he say why the explanations were unconvincing? Well, I think he talks, and the board discusses this as well, that in the sworn statement, there is a presumption of regularity. That the government officials are trained to listen to... But is this a government official? That's providing... You better speak in the microphone. Oh, sorry. I keep wanting to look at you. I apologize. That the government official... The border interview is conducted by immigration officials. Maybe I misunderstood your question. I apologize. I don't understand that they are, quote, public officials. I'm sorry? Post? I do not understand your explanation that they are public officials. They're not appointed. Government officials. They're not elected, et cetera. They're government employees. Government employees, yes. And as the case I cited in Agoffey-Lynch, we do... They're performed to train these kinds of interviews. And let's go to the border interview. What case says they are entitled to a presumption of correctness? Oh, the Agoffey-Lynch case. It's cited in my brief on page 24. And if you'd like the citation, I could give it to you as well. What was the case again? I'm probably mispronouncing it. Adgov, A-N-G-O-V-V-Lynch. And let's go to the border interview because that is... Petitioner's trying to minimize it. However, Petitioner was in the Creole language. It says it at the top. And he is given the warning, if you fear or have a concern about being removed from the United States or about to be sent home, you should tell me so during this interview because you may not have another chance. He was warned, this could be your last chance. Is there an opportunity for an entrant to request privacy to talk about the fear interview, or are they obligated to say whatever they have to say in the group setting? My understanding is that if they ask for a private room, they will be moved to a private setting. I don't know if it's a room, but a private setting. And then he said, are you willing to voluntarily make a statement at this time? He says yes. Do you know that for a fact? That they're allowed? That they're entitled to a private room if they ask for it when there are hundreds in the room? But going to that point you mentioned, there was also one inconsistency about him. Okay, so he says I was in a room with 100 other Haitians. I'm sorry, I keep doing this. And so he says I did not want to discuss my sexual orientation. However, he also claims another fear of returning to Brazil, which was his Haitian ethnicity. He never mentions that at the border interview either. Therefore, I don't get your point. Well, if you're in a room with 100 other Haitians and you fear discussing sexual orientation, a sensitive matter, is much different than if you're discussing in a room of 100 other Haitians the Haitian ethnicity. But he still didn't mention anything. At his border interview, he four times said, what problems do you have? No. Do you fear returning to your country? No. Would you be harmed if returned to Haiti? No. Do you fear returning to your country based on your political or religious beliefs? No. They even provided him a catch-all where he had an opportunity to mention anything, including that I fear returning to Brazil because of my Haitian race. He still said no. And this court has a line of cases which distinguishes between a vague outline of I was mistreated, but I'm going to miss one or two pieces of information, and affirmatively denying that you feared anything. And this court outlined that distinguished those two situations in the Garcia case and the Zhu case, which Petitioner cites. This is a case where he affirmatively denied having any fear at the border interview. Counsel, may I ask you, if we agree with opposing counsel that there was an insufficient explanation given as to why these statements were found not credible, do you lose? No, because I think you could also go, we only need one ground. The agency only needs one ground. Excuse me, the agency. This court only needs one ground to uphold the adverse credibility finding. There were three inconsistencies, his permanent resident status, which Petitioner is trying to blame the agency for not making a firm resettlement issue. This is not at issue here, as this court mentioned. He did not keep consistent as to whether he was a permanent status. He changed his story. After he got a lawyer. Which he now has an incentive to change the story, as this court noted. Because now he has the knowledge that he didn't have before, isn't that right? Exactly. That the firm resettlement bar could bar him from asylum. And again, this is not before this court, the agency declined to address that firm resettlement issue. But it's just another instance of him not keeping his story straight. The permanent resident status, he didn't ever discuss a fear of returning to Haiti. But don't you agree with counsel that in order to be a contradiction, there has to be some element of misdirection or intent to deceive? And once he found an attorney, he did have the intent to deceive, is what the government would argue. That now he knows that firm resettlement will bar him from asylum. And now he's changing his story. You said there were three inconsistencies. The one was whether or not he feared returning to Haiti. The second is on the permanent resettlement. What's the third one? The fear of returning to Brazil. So he never mentions anything at his border interview, anything related to his fear of returning to Brazil. At his credible fear interview, he never mentions anything about fearing returning to Brazil for being gay. He only mentions his Haitian ethnicity and that he was unable to work because he was Haitian. And then at his testimony at his merits hearing with an attorney, he says he fears returning to Brazil because of his Haitian ethnicity and because he was gay. Three times that he changed his story again. And he used, as this court noted, he said that the Haitians were in the room with him. And he used the explanation of the Creole interpreter. However, there's no evidence of that. He said that the Creole interpreter didn't work, and then I had to use someone else to speak Spanish. There's no evidence of this on the record. This is Petitioner's burden of proof to prove that he was credible. This is a substantial evidence standard Petitioner must show that the record evidence not only supports the conclusion that he was credible but compels it, and he has not met that standard. May I ask you the question about the interpreter? Yes. He explained he did not disclose his fear of persecution to the Border Patrol agent because the interpreter did not speak Creole well and he had difficulty understanding him. The BIA and IJ both dismissed this explanation, stating that cases stand for the presumption that public officials discharge their duties properly. Well? And there's several ---- In the example, the interpreter said, have you ever used another name? If yes, what is the name you have used? He only answers yes. However, he consistently stated elsewhere that he had never used another name. However, Your Honor, there are several incidences, including Petitioner's own testimony, that mentions a Creole interpreter being used. If you look at page 696, which is the record statement of the Border interview, it says in the Creole language the interpreter's name and it was employed by AT&T, the telephone company. On page 226, he says the Haitian who spoke on the phone did not speak Creole well. Well, if he was using a Spanish interpreter, how is there a Creole interpreter not being used well? His testimony remains inconsistent. And then he admits to a call going through the telephone. So Petitioner has not met his burden of proof in showing that he was credible. I will take any additional questions at this time. Thank you. I think there are none. Thank you. The government now seeks to introduce a third basis for finding him not credible, but we are focused on the Board's decision. Pursuant to SEC v. Chenry, we only rely upon the reasoning provided by the agency. And so we're bound by the fact that, one, the agency did not explain why it was insufficient for him, why it was not credible, that he was afraid to talk about his sexual orientation, and, two, the agency's reliance on his inconsistent statements regarding his legal status in Brazil. But as we've stated, he provided the documents. He was previously unrepresented, and, in fact, it would defy the concept of providing legal representation if a person were penalized for providing additional details once they get legal representation. This Court has time and again recognized the complexity of the asylum process and how it needs the guiding hand of legal representation to go through that process. And the translation issues that this Court has just referred to only reinforce that the statements made at the border were not statements meant to deceive or with an intent to trick the agency. He provided the agency with the documentation to make the legal determination. Thank you. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the Court.
judges: D.W. Nelson, Rawlinson, Bea